UNITED STATES of America,
Plaintiff–Appellee,

v.

Izeal RIDEAU, Jr., Defendant–Appellant.

No. 91–4172.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1991.

Rehearing En Banc Granted
Feb. 11, 1992.

Donald E. Sample, Beaumont, Tex. (Court-appointed), for defendant-appellant.

Kerry M. Klintworth, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Izeal Rideau, Jr., contends that the weapon admitted into evidence against him should have been suppressed on the ground that it was seized pursuant to an invalid investigatory detention and protective patdown. Finding that the patdown was improper, we now reverse his conviction.

### I.

■ Officer Jimmy Ellison and his partner were driving toward the intersection of Bonham and Martin Luther King in Beaumont, Texas, at about 10:30 in the evening.[1] When Ellison observed a person wearing dark clothing standing in the road, he flashed his bright lights on and off. The person, who was later identified as Rideau, stumbled as he stepped from the road.

Ellison got out of the car and asked Rideau to identify himself. Rideau began to back away. Ellison then reached out to pat down Rideau's outer clothing and felt what he believed to be a weapon. Ellison called out "gun" to his partner and grabbed Rideau's arm. Ellison's partner

grabbed Rideau's other arm. When Ellison reached into Rideau's pocket, he found a firearm, which later turned out to be loaded.

Rideau was charged with being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1). Before trial, Rideau filed a motion to suppress the weapon.[2] At the suppression hearing and at trial, Ellison testified that he thought Rideau might be intoxicated and that he stopped him in order to check on his condition. He also testified that he conducted the patdown because he was "concerned for [his] safety due to the área, time of night and [Rideau's] apparent nervousness." The motion was denied, and Rideau was convicted. On appeal, Rideau argues that the weapon should have been suppressed on the ground that it was seized in violation of his rights under the Fourth Amendment.

### II.

■ In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), the Court held that an officer may conduct an investigatory detention and protective patdown when he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous...." The inquiry breaks down into two parts. First, the officer must be justified in initially detaining the individual. A brief detention is lawful when it is supported by specific and articulable facts that reasonably warrant the intrusion. Second, in order to justify the patdown, the officer must be able to point to specific and articulable facts suggesting that the individual presented a risk of harm to the officer or to others. *United States v. Campbell*, 942 F.2d 890, 892 (5th Cir.1991). *See also United States v. Johnson*, 932 F.2d 1068,

---

1. When considering a district court's ruling on a motion to suppress, we view the evidence in the light most favorable to the party who prevailed below (in this case, the government). *United States v. Simmons*, 918 F.2d 476, 479 (5th Cir. 1990).

2. Rideau also filed several motions for acquittal and a motion for a new trial based upon the seizure of the weapon. These motions were denied.

1069 (5th Cir.) (per curiam), *modified on other grounds*, 932 F.2d 1071 (5th Cir.1991) (per curiam). We review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Wallace*, 889 F.2d 580, 582 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990).

### A.

■ Rideau first contends that the officers had no business stopping him after they observed him stumble as he attempted to get to the side of the road. Reading *Terry*'s language narrowly, Rideau argues that officers cannot detain an individual unless they suspect him of being involved in some sort of criminal activity.

■ We refuse to give *Terry* such a cramped interpretation. *Terry* held that an officer may briefly detain an individual whom he suspects is involved in criminal activity. It did not exclude the possibility that an officer may stop an individual for other reasons consistent with the Fourth Amendment.[3] Indeed, the opinion states that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which ... reasonably warrant [an] intrusion" into the individual's liberty. 392 U.S. at 21, 88 S.Ct. at 1880. *Terry* focused on the officer's suspicion that the defendant was involved in criminal activity only because that was the justification the officer gave for the detention.

Moreover, although the Supreme Court has not precisely addressed the issue of detaining persons who appear to be intoxicated or in need of medical assistance, it has noted that local police engage in "community caretaking functions, totally divorced from the detection, investigation, or ac-

quisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). *See also Wallace*, 889 F.2d at 582 (officers justified in detaining and patting down defendant where they had been informed that he possessed a weapon and was threatening to commit suicide; leaving scene would have been poor police work); I ABA Standards for Criminal Justice, Standard § 1–2.2 at 31–32 (2d ed.1980) (officers must "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "provide other services on an emergency basis").

The officers would have been derelict in their duties had they not stopped Rideau to check on his condition. A man wearing dark clothing who is standing in the middle of the road and possibly intoxicated presents a hazard to himself and to others.

### B.

■ Although we find that the officers were justified in checking on Rideau's condition, they were not justified in conducting a protective patdown. In order to justify a patdown, an officer must provide "specific [and] articulable facts [that] support an inference that the suspect might be armed and dangerous." *United States v. Cole*, 628 F.2d 897, 899 (5th Cir.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981).[4]

Ellison offered the following "articulable facts" to support the inference that Rideau could have been armed and dangerous: (1) the scene was "a high crime area, [with] drug trafficking, street deals, that type of thing"; (2) it was late at night; (3) he had arrested people in that area in the past who had been carrying weapons; and (4) Rideau appeared nervous.[5]

---

3. In fact, there are many police-citizen encounters that do not qualify as "seizures" within the meaning of the Fourth Amendment. For example, communication between police officers and citizens that involves no coercion or detention does not implicate Fourth Amendment protections. *United States v. Simmons*, 918 F.2d 476, 480 (5th Cir.1990) (citation omitted). Whether the officers "seized" Rideau for purposes of the Fourth Amendment, however, is not at issue in this case. The government concedes that it detained and frisked Rideau; the only question, then, is whether the detention and patdown were proper under the Fourth Amendment.

4. We have repeatedly reaffirmed *Terry* and its holding that permits officers to conduct a protective patdown only when they reasonably fear

that the person with whom they are dealing is armed and dangerous. *See, e.g., United States v. Maestas*, 941 F.2d 273, 276 (5th Cir.1991); *Johnson*, 932 F.2d at 1069.

5. At the suppression hearing, Ellison testified as follows:

Q: Were you in the area of Bonham and Martin Luther King at about 10:30 p.m. on that day?
A: Yes, ma'am.

.  .  .  .  .

Q: What type of area is that, high crime, high crime area, that sort of thing?
A: Yes, ma'am, it is. There's a high crime area, drug trafficking, street deals, that type of thing.

■ The first three "facts" do not support the patdown because they focus on Rideau's *surroundings* rather than his *behavior*. An officer may pat down an individual only if his suspicions of dangerousness are directed toward the subject of the patdown. In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), for example, the Court held that police who were executing a search warrant could not frisk individuals who happened to be on the premises at the time, absent individualized suspicion that the person to be frisked was armed and presently dangerous.

■ Similarly, officers cannot frisk individuals in a high crime area late at night simply because those individuals are present there. As the Supreme Court recently noted,

[D]espite the danger that inheres in on-the-street encounters and the need for police to act quickly for their own safety, the Court in *Terry* did not adopt a bright-line rule authorizing frisks for weapons in all confrontational encounters. Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.

*Maryland v. Buie*, 494 U.S. 325, 334–35 n. 2, 110 S.Ct. 1093, 1098 n. 2, 108 L.Ed.2d 276 (1990) (refusing to permit protective sweeps during in-home arrests absent individualized suspicion of dangerousness). *See also Brown v. Texas*, 443 U.S. 47, 49, 99 S.Ct. 2637, 2639, 61 L.Ed.2d 357 (1979) (although area had "a high incidence of drug traffic," patdown was improper where "the officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed").

■ Ellison articulated only one "fact" that pointed directly to Rideau—his "apparent nervousness." As an initial matter, we note that we never have held that general nervousness raises an inference of dangerousness, and we refuse to do so now.[6] A nervous demeanor is simply too vague and generalized to meet the "specific and articulable facts" requirement. Moreover, it is apparent from Ellison's testimony at trial that he frisked Rideau as a matter of routine, not because of any suspicious movements on Rideau's part.

The exchange between Ellison and the prosecutor went as follows:

Q: Once again, what's the purpose of you patting somebody down in that area?

A: The purpose of that is, a lot of times you have an area such as this, it is a high crime area, the officer is always concerned for his safety and any other citizens that could be nearby. You pat down a person's outer clothing to determine if he's got any kind of weapons or knives, guns, et cetera, that could be quickly accessible to him before you could have a chance to get control of him, *if he did try to go for them.* [Emphasis added.]

It is reasonable to assume from this testimony that Rideau did not "try to go" for the weapon. Therefore, this case is analogous to *Ybarra,* in which the Court rejected an inference of dangerousness where

---

Q: In your experience have you found people in that area also carry weapons?
A: Yes, ma'am.

. . . . .

Q: And when you got out of the patrol car, which I assume you did, what action did you take?

. . . . .

A: At that time, concerned for my safety due to the area, time of night and [Rideau's] apparent nervousness, I reached out to pat his outer clothing for officer safety.

. . . . .

At trial, Ellison gave substantially similar testimony, although he did not mention Rideau's "apparent nervousness."

6. *United States v. Simmons*, 918 F.2d 476, 481 (5th Cir.1990), does not hold otherwise. In *Simmons,* we noted that the agents could reasonably suspect the defendant of being involved in criminal activity where he exhibited "extreme nervousness." However, this was not the sole basis for stopping the defendant. The defendant had disembarked a plane incoming from a known source city for drugs. Moreover, his companion was intoxicated and could not provide a reasonable explanation for his travel (although he stated that he had come to the city to paint a house, he could not say which house he was going to paint). This information supported the stop. We held that the agents had probable cause to search the defendant when, after cocaine had been found on his companion's person, he became "extremely nervous, . . . stepped back against the wall, . . . zipped up his ski jacket, and . . . crossed his arms tightly across his chest." *Id. Simmons* did not address the question of whether nervousness alone can support a reasonable inference that an individual may be armed and dangerous.

the defendant, "whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening." 444 U.S. at 93, 100 S.Ct. at 343.

In fact, Ellison did not testify that he observed Rideau reach for his pocket or make other sudden movements. *See United States v. Garza*, 921 F.2d 59 (5th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 91, 116 L.Ed.2d 63 (1991) (defendant "move[d] as if he were trying to conceal something"); *United States v. Landry*, 903 F.2d 334, 337 (5th Cir.1990) (defendant reached for a bag). Nor did he testify that he saw a bulge in Rideau's pocket that could have been a handgun. *See Johnson*, 932 F.2d at 1070 (officer saw long knife in plain view next to defendant and saw outline of a handgun in a garment in reach of defendant). Although he asked the defendant to identify himself, he did not wait for an answer, nor did he ask the defendant whether he was armed. *See United States v. Harvey*, 897 F.2d 1300, 1304 (5th Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990) (the officer "point blank asked [the defendant] if [he] was armed. [The defendant], instead of responding either affirmatively or negatively, simply remained silent."). Finally, there was no indication that Rideau had the capacity or the intent to assault others. *See Campbell*, 942 F.2d at 892–93 (federal agents pulled defendant, a known drug trafficker, out of his car and patted him down after he had led them on a high speed chase that culminated in a collision with an agent's vehicle).

We do not attempt to catalogue all the circumstances under which an inference of dangerousness may be drawn. Rather, we merely hold that where there is no indication (other than a generalized sense that the person is nervous) that an individual possesses a weapon, a protective patdown runs afoul of the dictates of *Terry* and its progeny. This is such a case.

### III.

Because the patdown violated the dictates of *Terry*, the weapon seized pursuant to the patdown should have been suppressed. Given that the weapon was the sole evidence admitted against Rideau at trial, we now REVERSE his conviction for insufficient evidence.

### Order.

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO GARZA and DeMOSS, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this case shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.