IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-124-CR





STEVEN BELL,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY



NO. 352,609, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING



 




 This appeal is taken from a conviction for the unlawful possession of marihuana
of two ounces or less. Appellant entered a plea of nolo contendere to the information in a bench
trial. The trial court assessed his punishment at confinement in the county jail for sixty days and
a fine of one thousand dollars. The imposition of the sentence was suspended, and appellant was
placed on probation subject to certain conditions.

 In his sole point of error, appellant contends that the trial court erred in denying
his motion to suppress evidence illegally seized during the execution of a search warrant that did
not specifically name him "as a suspect in a drug raid." We will reverse the conviction.

 Appellant filed a pretrial motion to suppress evidence seeking, inter alia, to have
the trial court suppress any tangible evidence seized without lawful warrant, probable cause, or
other lawful authority in violation of appellant's rights under the Fourth and Fourteenth
Amendments, United States Constitution, Article I, Section 9 of the Texas Constitution, and
Chapters fourteen and thirty-eight of the Texas Code of Criminal Procedure.

 An evidentiary hearing on the motion was conducted in two stages, first on
November 6, 1991, and then on January 23 and 24, 1992. At the conclusion of the hearing, the
trial court denied the suppression motion. Appellant then entered a plea of nolo contendere to the
information. After conviction, appellant gave notice of appeal. See Tex. R. App. P. 40(b)(1).

 The evidentiary hearing revealed that on March 6, 1991, Austin Police Officer
Liana Crow obtained a combination search and arrest warrant. The warrant authorized peace
officers to enter the premises at 7513 Meador Avenue in Austin to search for and seize the
marihuana described in the affidavit for the warrant and to arrest "each person described and
accused in the affidavit." The affidavit stated that the premises were controlled by "1. Otis Neal
Daniels, Jr., black male, born 03/14/61, and; 2. Other persons whose names and identities are
unknown to your affiant at this time." The affidavit further stated that the affiant believed,
charged, and accused the "afore-described persons" as having intentionally and knowingly
possessed marihuana at the described premises on or about March 1, 1991.

 About 12:30 p.m. on March 6, 1991, eight or nine Austin police officers arrived
at 7513 Meador Avenue to execute the warrant. Appellant Bell was on the front porch of the
house. When he saw the officers, appellant moved toward the front door and shouted "Police,
Police." Officer Richard Burns testified that within a matter of seconds, he had grabbed appellant
and had taken appellant to the ground and handcuffed him. In a subsequent frisk of appellant,
Burns felt an object in appellant's right front pants pocket that seemed to be a knife. In removing
what was a pen knife, not an illegal weapon, Burns also removed a plastic baggie of marihuana,
which is the basis of the instant prosecution. Inside the house, the officers found Otis Daniels,
three other men, cocaine, and marihuana. Appellant was not charged with the possession of the
contraband found in the house. The law of parties is not involved here.

 In Ybarra v. Illinois, 444 U.S. 85 (1979), the Supreme Court considered the
authority of an officer to frisk persons who are present at the time of the execution of a search
warrant. In Ybarra, officers had secured a warrant to search a tavern for narcotics. In executing
the warrant, officers subjected all the tavern's patrons to a frisk search. The Court held that the
search which yielded the contraband was improper in the absence of a reasonable belief that the
person to be frisked was presently armed and dangerous. Before the Ybarra decision, an officer
in Texas executing a valid search warrant had the right to search all persons found on the premises
during the execution of the warrant. See, e.g., Rice v. State, 548 S.W.2d 725 (Tex. Crim. App.
1977); Hernandez v. State, 437 S.W.2d 831 (Tex. Crim. App. 1968); Conner v. State, 712
S.W.2d 259, 260 (Tex. App.--Austin 1986, pet. ref'd). This authority of Texas peace officers was
further abrogated by the decision in Lippert v. State, 664 S.W.2d 712 (Tex. Crim. App. 1984),
which followed Ybarra. The Lippert opinion articulated the following principles: (1) a warrant
to search a premises and to arrest and search specified individuals does not carry with it the right
to detain, search, or frisk persons found on the premises but not directly associated with the
premises and not named or specifically described in the warrant; (2) to justify the detention and
search of a person, other than an occupant, present at the scene of a valid execution of a search
warrant, there must be some independent factors, other than mere presence, tying the person to
the unlawful activities on the premises; and (3) a frisk of a person merely present at the scene
must be justified under Terry v. Ohio, 392 U.S. 1 (1968), i.e., the police must have a reasonable
belief that the person may be armed and presently dangerous. Lippert, 664 S.W.2d at 721-22. 
See also Worthey v. State, 805 S.W.2d 435, 438 n.5 (Tex. Crim. App. 1991); State v. Owens,
810 S.W.2d 874, 875 (Tex. App.--Austin 1991, no pet.); Conner, 712 S.W.2d at 260.

 Appellant initially claims that the first principle of Lippert was not met. Appellant
was not shown to be a resident or occupant of the Daniels' house. While appellant was present
at the time of the execution of the warrant, he was not named or specifically described in the
warrant. Officer Crow, the affiant on the affidavit for the warrant, testified that she had seen
appellant on the premises in question on two occasions within three days of the raid. Once she
saw appellant standing on the porch and another time she observed him helping wash a car. 
Officer Crow agreed that appellant had not been named or specifically described in the warrant. 
The State urges that the warrant sufficiently described appellant and was not so general as to
permit indiscriminate arrests and searches of a larger number of persons. The State's reliance
upon Gonzales v. State, 761 S.W.2d 809 (Tex. App.--Austin 1984, pet. ref'd), is misplaced. 
Gonzales is distinguishable on its facts as well as the different terms of the two warrants.

 Appellant also urges that there was no compliance with the second principle of
Lippert in that there were no independent factors, other than mere presence, tying him to the
unlawful activities the police believed were occurring at 7513 Meador Avenue. The State
disagrees. The State contends that appellant's act in warning or attempting to warn those in the
house of the approach of the police cannot be characterized as consistent with innocent activity. 
In Conner, as in the instant case, the officers were wearing jackets clearly identifying themselves
as police officers. In Conner, this Court stated:


 We do not believe that only a person engaged in criminal activity would be startled
by the sight of seven, presumably armed, police officers approaching a house as
he stepped outside. Nor do we find it necessarily indicative of criminal behavior
that such a person would advise the others present in the house of the approach of
the police. . . . In short, we find the evidence cited by the State insufficient to tie
appellant to the unlawful activities allegedly taking place in the Benson house.



Conner, 712 S.W.2d at 261. We similarly hold that the evidence in this cause is insufficient to
tie appellant to the unlawful activities, if any, taking place in the Daniels' house.

 Furthermore, the frisk search was not justified under Terry v. Ohio, 392 U.S. 1
(1968). In Terry, the Court held an officer may conduct an investigatory detention and protective
patdown when he "observes unusual conduct which leads him reasonably to conclude in light of
his experience that criminal activity may be afoot and that the persons with whom he is dealing
may be armed and presently dangerous. . . ." Terry, 392 U.S. at 30. The inquiry breaks down
into two parts. First, the officer must be justified in initially detaining the individual. A brief
detention is lawful when it is supported by specific and articulable facts that reasonably warrant
the intrusion. Second, in order to justify the patdown, the officer must be able to point to specific
and articulable facts suggesting that the individual presented a risk of harm to the officer or to
others. United States v. Campbell, 942 F.2d 890, 892 (5th Cir. 1991). An officer may pat down
an individual only if his suspicions of dangerousness are directed toward the subject of the
patdown. United States v. Rideau, 949 F.2d 718, 721 (5th Cir. 1991).

 In the instant case, Officer Burns testified that in a matter of seconds after the
police arrived on the scene, he had appellant on the ground and had handcuffed him. Appellant
did not resist. Burns acknowledged that appellant had not assaulted or threatened him. The
officer did not see a weapon on appellant before taking appellant into custody. He could not point
to one thing that made him believe that appellant had a weapon. When Officer Burns was asked
if he had any articulable fact that appellant was a danger to the officers or others, he replied: 
"That's an unknown." Officer Burns did testify that the police assume that everyone "in the
house" during a narcotic raid is a possible threat and may be armed and dangerous. He related
that police officers try to maintain control of everybody as quickly as possible for safety reasons,
and that this standard operating department policy was followed on the occasion in question. 
Fourth Amendment protection against unreasonable searches and seizures, however, cannot be
whittled away by a police regulation or standard operating procedure. See Benavides v. State, 600
S.W.2d 809, 812 (Tex. Crim. App. 1980). To support the search, Officer Burns improperly
focused on appellant's surroundings rather than on his behavior. (1) See Rideau, 949 F.2d at 721. 
In determining whether an officer has acted reasonably in executing a stop-and-frisk search, courts
must give due weight to the specific inferences which the officer is entitled to draw from the facts
of the situation in light of the officer's experience. United States. v. Harvey, 897 F.2d 1300,
1303 (5th Cir. 1990). In that regard, courts are also bound to reject an officer's inchoate or
unparticularized suspicion or hunch. Terry, 392 U.S. at 22; Harvey, 897 F.2d at 1303.

 Officer Burns' sole justification for the stop-and-frisk search was his later assertion
that it is common for persons dealing in narcotics to carry weapons. This justification, standing
alone, would be insufficient to pass muster under Terry standards. Mere presence neither obviates
nor satisfies the requirement of Terry that specific articulable facts support an inference that the
suspect might be armed and dangerous. Ybarra, 444 U.S. at 92; United States v. Cole, 628 F.2d
897, 899 (5th Cir. 1980).

 Under any circumstances, it appears from the record that the actions of Officer
Burns in grabbing appellant, throwing him to the ground and handcuffing him amounted to an
arrest and not a mere investigative detention or stop under Terry. See Burkes v. State, 830
S.W.2d 922, 925 (Tex. Crim. App. 1991); Amores v. State, 816 S.W.2d 407, 411-12 (Tex. Crim.
App. 1991); Torres v. State, 825 S.W.2d 124 (Tex. Crim. App. 1992) (remanded for
reconsideration in light of Amores); Hafford v. State, 828 S.W.2d 275 (Tex. App.--Fort Worth
1991, pet. ref'd); Brown v. State, 826 S.W.2d 725 (Tex. App.--Houston [14th Dist.] 1992, no
pet.) (suspect was "arrested" when initially stopped by officers who came at suspect from both
sides to keep him from getting away, and suspect was forced to lean on police car while officer
frisked the suspect and placed his hand on the suspect throughout the entire encounter). Under
state law an arrest occurs when a person's liberty of movement is restricted or restrained. Hoag
v. State, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987). Article 15.22 of the Texas Code of
Criminal Procedure provides that "a person is arrested when he has been actually placed under
restraint." Tex. Code Crim. Proc. Ann. art. 15.22 (West 1977).

 Having determined from all the facts and circumstances surrounding the detention
that an arrest occurred, see Hoag, 728 S.W.2d at 378, the issue is whether the police officer
effectuated a legal arrest of appellant and thereby properly averted the suppression of the fruits
of the arrest. An arrest must be based on the higher standard of probable cause, and is thus
distinguishable from an investigative detention or stop under Terry. See Glass v. State, 681
S.W.2d 599, 601 (Tex. Crim. App. 1984). The officer is required to have probable cause to
believe that a particular person had committed or is committing an offense. Terry, 392 U.S. at
11 n.5. The test for determining the existence of probable cause for a warrantless arrest is
"[w]hether at that moment the facts and circumstances within the officer's knowledge and of
which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in
believing that the arrested person had committed or was committing an offense." Adkins v. State,
764 S.W.2d 782, 785 (Tex. Crim. App. 1988) (quoting Beck v. Ohio, 379 U.S. 89 (1964)). State
law governs the determination of probable cause and the legality of the arrest so long as the state
law does not violate federal constitutional protection. Milton v. State, 549 S.W.2d 190, 192 (Tex.
Crim. App. 1977). Probable cause determinations in a warrantless arrest setting are made
primarily based on chapter fourteen of the Texas Code of Criminal Procedure. And the totality
of the circumstances test is applied to determine probable cause for a warrantless arrest. 
Eisenhauer v. State, 754 S.W.2d 159 (Tex. Crim. App. 1988); see also Amores, 816 S.W.2d at
413. The State has the burden to show the existence of probable cause to justify the warrantless
arrest or search. Brown v. State, 481 S.W.2d 106, 109 (Tex. Crim. App. 1972); Brown, 826
S.W.2d at 728.

 The State also argues, as in Conner, that the police officers had probable cause to
arrest appellant for violating section 38.05(a)(3) of the Texas Penal Code, which provides that a
person commits an offense if, with intent to hinder the arrest of another for an offense, he warns
the other of impending discovery or apprehension. Tex. Penal Code Ann. § 38.05 (a)(3) (West
1989). The State calls attention to article 14.01 of the Texas Code of Criminal Procedure, which
provides that a peace officer may make a warrantless arrest for an offense committed in his
presence or within his view. Tex. Code Crim. Proc. Ann. art. 14.01 (West 1977). In Conner,
this Court wrote:


 Just as a person's mere propinquity to another independently suspected of criminal
activity does not, without more, give rise to probable cause to search that person,
Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L. Ed. 2d 917 (1968), neither
does the mere fact that a person informs another independently suspected of
criminal activity of the approach of a police officer, without more, give rise to
probable cause to arrest that person for hindering arrest.



Conner, 712 S.W.2d at 261.

 In reviewing a warrantless arrest to determine the existence of probable cause, the
courts look to the facts known to the officers at the moment or time of arrest; subsequently
discovered facts or later-acquired knowledge, like the fruits of the search, cannot retroactively
serve to bolster probable cause at the time of the arrest. Amores, 816 S.W.2d at 415; Wilson v.
State, 621 S.W.2d 799, 804 (Tex. Crim. App. 1981).

 From a totality of the circumstances, it is clear that the State failed to meet its
burden to show probable cause for the warrantless arrest of appellant. The arrest was not lawful
and the evidence seized pursuant to the illegal arrest should have been suppressed. Tex. Code
Crim. Proc. Ann. art. 38.23 (West Supp. 1993). The trial court erred in denying the motion to
suppress evidence including the marihuana found and made the basis of the instant prosecution. 
We find the trial court improperly applied the law to the facts. See Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim. App. 1990). The sole point of error is sustained.

 The judgment of conviction is reversed and the cause remanded to the trial court.



 

 John F. Onion, Jr., Justice

[Before Justices Powers, Kidd, and Onion*]

Reversed and Remanded

Filed: January 13, 1993

[Publish]



























* Before John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   At the first stage of the evidentiary hearing, Officer Burns testified that at the time of the
raid he did not know appellant and was not familiar with him in any way. At the second stage
of the hearing, over two months later, Burns related that he recognized appellant after appellant
had been detained; that he had handled appellant on a raid at the same location in December 1990;
and that appellant had no contraband on his person on that occasion. It appears that appellant was
released following the December 1990 raid. Under any circumstances, Officer Burns did not
recognize appellant until sometime after appellant was taken into custody and frisk searched on
March 6, 1991.