TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00609-CR







Alfredo Trinidad, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW OF COMAL 


NO. 96CR-297, HONORABLE FRED A. CLARK, JUDGE PRESIDING






 Appellant Alfredo Trinidad appeals from his conviction for possessing less than two ounces
of marihuana. Tex. Health & Safety Code Ann. § 481.121 (West Supp. 1997). The trial court assessed
appellant's punishment at confinement in the county jail for sixty days and a fine of $450.00. The imposition
of sentence was suspended and appellant was placed on community supervision for one year. In his sole
point of error, appellant asserts that the trial court erred in refusing to grant his motion to suppress evidence
obtained by an unjustified protective search for weapons. We will sustain appellant's point of error and
reverse the judgment of conviction.

 The evidence admitted in the hearing of the motion to suppress will be summarized. On
May 26, 1995, Leslie Hunter, a certified peace officer employed by the San Antonio Independent School
District Police Department, and Juan Dominguez, a certified peace officer employed by the Edgewood
Independent School District Police Department, were serving as members of the Alamo Area Gang Task
Force, and were "monitoring gang activities" in Jacob's Creek Park in Comal County. At about 5:00 p.m.,
the officers were driving through the park; when they were approximately ten to fifteen yards from a
campsite, "a strong odor of burnt marihuana" came through the open windows of their patrol car. The
officers stopped, got out of the patrol car, and started talking to the three men seated at the campsite
dressed in "bathing suits." As the officers approached the men, the man sitting next to the appellant stood
and dropped a cigarette to the ground. Officer Dominguez picked up the cigarette, a smoldering marihuana
"roach." The man who dropped the "roach" was searched and placed under arrest. That man had no
weapons. The other men were told to stand and Officer Dominguez immediately patted them down. When
the officer patted down appellant, "[I] felt a bulge on the right hand pocket, if I'm not mistaken." The
bulge, which was not visible before the pat-down, was caused by a baggie of marihuana. Appellant was
then placed under arrest.

 The State argues that the officers had probable cause coupled with exigent circumstances
to arrest and search appellant for marihuana. This argument is based on evidence of appellant's close
proximity to his companion who possessed and smoked a marihuana cigarette combined with the presence
of a strong odor of burnt marihuana. We conclude that the evidence was not even arguably sufficient to
show probable cause to allow the warrantless arrest and search of appellant.

 Appellant does not contend that his detention for investigation was unlawful, but he does
insist that the officers' protective pat-down frisk, during which the marihuana was found, was not lawfully
justified. To justify a pat-down frisk, an officer need not be absolutely sure that the individual he frisks is
armed, but to make a lawful protective search of the individual's outer clothing for weapons, the officer
must have a reasonable belief based on specific articuable facts that the individual is armed and dangerous. 
See Terry v. Ohio, 392 U.S. 1, 27 (1968); Ybarra v. Illinois, 444 U.S. 85, 93 (1979); United States
v. Rideau, 949 F.2d 718, 720 (5th Cir. 1991); Davis v. State, 829 S.W.2d 218, 220 (Tex. Crim. App.
1992); Worthey v. State, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991); Strickland v. State, 923
S.W.2d 617, 620 (Tex. App.--Houston [1st Dist.] 1995, no pet.). The specific facts must amount to
more than a mere hunch or suspicion. Terry, 392 U.S. at 27; Graham v. State, 893 S.W.2d 4, 7 (Tex.
App.--Dallas 1994, no pet.). A person's mere propinquity to others who are independently suspected
of criminal activity does not, without more, give rise to probable cause to search that person. Ybarra, 444
U.S. at 91; United States v. Cole, 628 F.2d 879, 899 (5th Cir. 1980); Lippert v. State, 664 S.W.2d
712, 717 (Tex. Crim. App. 1984); Shelby v. State, 888 S.W.2d 231, 234 (Tex. App.--Houston [1st
Dist.] 1994, pet. ref'd); State v. Owens, 810 S.W.2d 874, 875 (Tex. App.--Austin 1991, no pet.). The
purpose of a limited search after an investigatory stop is not to discover crime, but to allow the peace
officer to pursue an investigation without fear of violence. Davis, 829 S.W.2d at 220; Harris v. State,
827 S.W.2d 49, 51 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd).

 The standard for review of a trial court's ruling on a motion to suppress has been recently
stated as follows:


In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony. Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim App. 1990). The trial court may accept or reject any or all of a
witness's testimony or evidence offered. Alvarado v. State, 853 S.W.2d 17, 23 (Tex.
Crim. App. 1993). In reviewing the trial court's decision, an appellate court does not
engage in its own factual review; it determines only whether the record supports the trial
court's findings. Romero, 800 S.W.2d at 543. The appellate court is not at liberty to
disturb supported findings of fact absent an abuse of discretion. Etheridge v. State, 903
S.W.2d 1, 15 (Tex. Crim App. 1994); Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim.
App. 1991). The appellate court shall not defer merely to the trial court's findings
regarding the historical facts but also to the trial court's conclusions regarding the legal
significance of those facts. DuBose v. State, 915 S.W.2d 493, 497 (Tex. Crim. App.
1996); State v. Carter, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996). The appellate
court will normally address only the question of whether the trial court improperly applied
the law to the facts. Romero, 800 S.W.2d at 543. If the trial court's decision is correct
on any theory of the law applicable to the case, it will be sustained even though the trial
court may have given the wrong reason for its ruling. Id.; Calloway v. State, 743 S.W.2d
645, 651-52 (Tex. Crim. App. 1988).



Rodriguez v. State, 939 S.W.2d 211, 215 (Tex. App.--Austin 1997, no pet.); Carroll v. State, 911
S.W.2d 210, 222 (Tex. App.--Austin 1995, no pet.). "As long as the trial court's rulings are at least
within the 'zone of reasonable disagreement' the appellate court should not intercede." DuBose v. State,
915 S.W.2d at 496-97; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

 The only evidence admitted in the suppression hearing was the testimony of Officers Hunter
and Dominguez. Officer Hunter testified:


Direct Examination



Q So how did you make contact with Mr. Trinidad, specifically?


A He was -- he was sitting there with the -- the man that dropped the cigarette.


Q Next to him?


A Yes, ma'am.


 * * * *


Q So what did you do after this guy dropped the roach?


A Well, we asked the defendants to stand up; and we patted them down for safety
reasons. And my partner felt a bulge in Mr. Trinidad's pants.


 * * * *


Q Could you see the bulge?


A I -- I'm not -- I can't recall if I saw the bulge or not.




Cross Examination



Q And what were the other two people doing at the time? What was Mr. Trinidad
doing?


A They were sitting down.


Q They were sitting down? Did they try to run or anything like that?


A No, sir.


Q Did they make any gestures with their hands or -- or do anything with their hands?


A Not that I can recall.


Q Is that when you had them all stand up and search them?


A Yes.


Q Okay. Why did you do that?


A For safety reasons and -- and because of the odor of marihuana coming from that
area.


Q So -- well, they had no -- they didn't give you any reason to fear for your safety,
did they?


A I -- I -- I approach everybody as a possible suspect in something.


Q So I mean is the reason why you were in fear for your safety because you found
drugs at the scene?


A That -- that was a factor, yes.


Q Okay. What were the other factors?


A Well, a week before that, we had -- we had stopped some people in that very
same area and found some weapons.


 * * * *

Q And these -- these-- all three defendants were in shorts?


A They were in bathing suits, I think.


Q Bathing suits and muscle shirts or tee shirts?


A I don't recall exactly what they were wearing.


 * * * *


Q . . . [Y]ou searched them for safety reasons, correct? And the reason why you
were in fear for your safety is because you found narcotics and because, the week
before, when you found narcotics, someone had a weapon?


A Yes, sir.


Redirect Examination



Q Officer, do you always do a pat-down of somebody when you're questioning
them, or why -- what was the reason for this?


A Well, because of the narcotics . . . I've dealt with subjects in the past with
narcotics and dealt with weapons along with those narcotics.


Q At that time, Mr. Trinidad was not under arrest, was he?


A No, he wasn't.



Officer Dominguez testified:



Direct Examination



Q Did you have any contact with Mr. Trinidad?


A Yes, ma'am. At that time, we went ahead and patted everybody down. At that
time, I felt a bulge on the right-hand pocket, if I'm not mistaken. And I asked him,
"What is this?" I think he told me straight out, "It's a baggie of marihuana." At
that time, he was placed under arrest.


Q Okay. When you were patting him down, what was your reason for patting him
down?


A Safety, officer's and -- and -- and the defendant's safety.


Q Okay. Do you remember how much there was in that bag, Officer?


A Right off the bat -- let me see.


 * * * *


Q Was it a usable quantity of marihuana?


A Yes, ma'am.


Q Okay. Could it have rolled one joint, two joints? How many?


A A couple.


 * * * *


Q Okay. Now, at the time you patted down, you found it in his pocket?


A Yes, uh-huh.


Q Okay. Did you take it out of his pocket, or did he?


A He -- I asked him what it was; and, when he told me it was marihuana, at that
time, I went ahead and take -- took it out.


Q Okay. And this was just on a regular pat-down; is that correct?


A Yes, ma'am.


Cross Examination




Q Officer, when you approached the defendants, you stated that you saw Defendant
No. 2 drop a marihuana cigarette or what turned out to be a marihuana cigarette.


A Yes, sir.


Q Okay. Did you, at any time, see any of the other defendants have any marihuana
on them?


A By seeing, no, sir.


Q Okay, so as you -- as you were approaching them, and when you first came in
contact with them, other than Defendant No. 2, no one was breaking any laws
against the State of Texas at that time?


A No, but the odor of marihuana on their clothes gave me suspicion to continue the
investigation on.


Q Okay. So the -- the reason why -- so they were detained at that point, all three,
right?


A Yes.


Q And the reason why you detained them was because you smelled the odor on --
odor of marihuana and because they were next to a guy you found marihuana on?


A Yes.


Q Okay. Was that the main reason; they were next to him?


A Excuse me? Can you explain?


Q Was the main reason you detained the other two -- now, we know that you have
reason to detain, obviously, the person who had the marihuana cigarette. I'm
talking about the other two -- other two defendants; in particular, Mr. Trinidad. 
You stated you -- you witnessed them commit no crimes against the State up until
that point, correct?


A Correct.


Q And they'd made no gestures or threats towards you?


A Well, not towards me, no.


Q All right. And there was no threats made, no verbal threats at you?


A No.


Q They didn't try to run away --


A No.


Q So the reason why they were detained is because you found marihuana on
Defendant No. 2, and they were with him or he was with Defendant No. 2?


A I detained him because the odor of marihuana was coming so heavily off -- off --
I mean you could smell it on his clothes. I mean you -- standing there, you could
smell it.


Q . . . [A]fter you found the marihuana cigarette, you performed your search on all
three of them?


A Yes.


Q Okay. And what was the reason for that search?


A For the safety --


Q It was for your safety?


A Yes.


Q Okay. What -- what was the reason for why -- were [you] in fear of your
safety?


A I was just checking for weapons. I-- that's just a routine thing we do. Whenever
we stop somebody, and we have suspicion, it's a regular pat-down for the safety
of everybody involved in the situation.


Q So that's your procedure?


A Yes.


Q It's auto -- you stop somebody for the marihuana cigarette, and you'll just pat
down everybody?


A That's for safety; yes, we do.



 When the officers approached the campsite they did not see appellant doing anything
unlawful, although he was sitting next to a man who was smoking marihuana. The officers did not see any
weapons and did not observe any bulges in appellant's clothing. Appellant remained seated until he was
told to stand; he did not attempt to escape; he made no furtive or threatening gestures; he made no verbal
threats; he was wearing a bathing suit and a muscle or T-shirt. The officers testified that when they stopped
someone processing a marihuana cigarette, for safety, they routinely patted-down everyone present. A pat-down was "just a routine thing" they did. The officers articulated no facts that would lead a reasonable,
experienced officer to believe that appellant was armed and dangerous and that he posed a threat to them
or their further investigation. In brief, the officers frisked appellant, who was dressed in a bathing suit,
because they smelled marihuana and saw him seated by a man smoking marihuana. We do not find that
the trial court's ruling on the motion to suppress was within the "zone of reasonable disagreement," and
conclude that a reasonable view of the evidence does not support the trial court's refusal to grant the
motion to suppress. The trial court abused its discretion in denying the motion to suppress. Appellant's
point of error is sustained.


 The judgment is reversed and the cause is remanded to the trial court.



 

 Carl E .F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Reversed and Remanded

Filed: September 11, 1997

Do Not Publish





































* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



P="BR2">
Q It was for your safety?


A Yes.


Q Okay. What -- what was the reason for why -- were [you] in fear of your
safety?


A I was just checking for weapons. I-- that's just a routine thing we do. Whenever
we stop somebody, and we have suspicion, it's a regular pat-down for the safety
of everybody involved in the situation.


Q So that's your procedure?


A Yes.


Q It's auto -- you stop somebody for the marihuana cigarette, and you'll just pat
down everybody?


A That's for safety; yes, we do.



 When the officers approached the campsite they did not see appellant doing anything
unlawful, although he was sitting next to a man who was smoking marihuana. The officers did not see any
weapons and did not observe any bulges in appellant's clothing. Appellant remained seated until he was
told to stand; he did not attempt to escape; he made no furtive or threatening gestures; he made no verbal
threats; he was wearing a bathing suit and a muscle or T-shirt. The officers testified that when they stopped
someone processing a marihuana cigarette, for safety, they routinely patted-down everyone present. A pat-down was "just a routine thing" they did. The officers articulated no facts that would lead a reasonable,
experienced officer to believe that appellant was armed and dangerous and that he posed a threat to them
or their further investigation. In brief, the officers frisked appellant, who was dressed in a bathing suit,
because they smelled marihuana and saw him seated by a man smoking marihuana. We do not find that
the trial court's ruling on the motion to suppress was within the "zone of reasonable disagreement," and
conclude that a reasonable view of the evidence does not support the trial court's refusal to grant the
motion to suppress. The trial court abused its discretion in denying the motion to suppress. Appellant's
point of error is sustained.