**Jose Luis SALAZAR, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 01–92–00907–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 19, 1995.

Frances M. Northcutt, Houston, for appellant.

John B. Holmes, Jr., Calvin A. Hartmann, Todd Bennett, Houston, for appellee.

Before ANDELL, HUTSON–DUNN and PRICE *, JJ.

## OPINION

ANDELL, Justice.

Appellant, Jose Luis Salazar, was charged by information with the misdemeanor offense of possession of marijuana in a usable quantity of under two ounces. After the trial court denied his motion to suppress, appellant pled no contest to the offense and the trial court assessed punishment at 140–days confinement in the Harris County Jail in accordance with a plea agreement. In a sole point of error, appellant contends that the trial court erred in denying his motion to suppress. We affirm.

## FACTS

Houston Police Officers obtained a warrant to search a residence located at 6130 Belmark in Harris County, Texas for narcotics. When the raid team arrived at the address to execute the warrant, the officers saw appellant and a black male standing on the doorstep of the residence. When appellant noticed that the officers, who were wearing raid jackets identifying them as Houston narcotics officers, were approaching the house, he started running toward the east side of the residence. Officer Moreno stopped appellant and asked him why he was running and informed him that the police were on the premises to execute a search warrant.

At that time, Officer Moreno did a patdown search of appellant in order to ensure that he was not carrying any weapons. When the officer felt a hard object in appellant's left rear pocket, he reached into the pocket and pulled out a knife and a plastic bag that contained marijuana and several rolling papers. Appellant was then arrested for possession of marijuana. The parties have stipulated that appellant was arrested without a warrant and that his arrest oc-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

curred while the officers were executing a valid search warrant for the location of 6130 Belmark.

 In a sole point of error, appellant contends that the trial court should have granted his motion to suppress due to the following factors: (1) his original detention was not supported by reasonable suspicion; (2) the protective search was not based on a reasonable belief that he was armed and dangerous; and (3) if so, the officers exceeded the scope of a protective search when they removed the plastic bag from appellant's pocket.

## STANDARD OF REVIEW

 A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Santos v. State,* 822 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1992, pet ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the trial court's ruling. *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State,* 758 S.W.2d 772 (Tex.Crim.App.1988). At the hearing on the motion to suppress, the trial judge is the sole fact finder, and as such, may believe or disbelieve all of or any part of any witness' testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Santos,* 822 S.W.2d at 339. Any finding supported by the record will not be disturbed on appeal. *Id.*

## ANALYSIS

### 1) The initial detention

As his first argument, appellant maintains that Officer Moreno did not have reasonable suspicion to detain him and, therefore, his original detention was illegal. As a preliminary matter, we must first determine whether a "detention" in fact occurred in this case.

 Pursuant to the United States and Texas Constitutions, a defendant is detained if, from his or her perspective, there has been such a display of official authority that a reasonable person would not have felt that he was free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Chambers v. State,* 866 S.W.2d 9, 19 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The record in this case indicates that when appellant began running towards the east side of the house, officer Moreno immediately approached appellant, asked him why he was running away, and informed him that the officers were at the residence to execute a search warrant. The officer then performed a protective search of appellant to ensure that appellant was not carrying weapons. We find that under these circumstances, a reasonable person in appellant's position would not have believed that he was free to leave and, thus, a detention occurred.

 Not every seizure of a person must be justified by probable cause to arrest for a crime. *Florida v. Royer,* 460 U.S. 491, 497–498, 103 S.Ct. 1319, 1323–1324, 75 L.Ed.2d 229 (1983); *Daniels,* 718 S.W.2d at 702 (circumstances short of probable cause may justify a temporary detention for the purpose of investigation). *Glass v. State,* 681 S.W.2d 599, 601 (Tex.Crim.App.1984). In order to justify an investigative detention, an officer is required to possess specific, articulable facts that, in light of his experience and general knowledge together with rational inferences from those facts, would reasonably indicate that the particular person has either committed or is about to commit a crime. *Holladay v. State,* 805 S.W.2d 464, 471 (Tex.Crim.App. 1991). In other words, the officer must have a reasonable suspicion that some abnormal activity is occurring or had occurred; some indication that the activity is related to a crime; and some suggestion to connect the detained person with the unusual activity. *Id.* Detention cannot be based on a hunch or on events that are as consistent with innocent activity as with criminal activity. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim. App.1983).

When Officer Moreno detained appellant, he had knowledge of the following facts: (1) the officers had a warrant to search for

narcotics on the premises where appellant was located; and (2) upon seeing the narcotics team, appellant immediately began to run. We must now determine if these facts gave rise to a reasonable, articulable suspicion that appellant had either committed or was about to commit a crime. *Holladay*, 805 S.W.2d at 471.

When a search warrant is issued for a particular residence, a judicial officer has made an objective determination that there is probable cause to believe someone in the residence is committing a crime. *Michigan v. Summers*, 452 U.S. 692, 703–04, 101 S.Ct. 2587, 2594–95, 69 L.Ed.2d 340 (1981). Therefore, when the warrant is executed, a person who is an occupant of those premises may be detained for the duration of the search. *Summers*, 452 U.S. at 703–04, 101 S.Ct. at 2594–95; *Mottley v. State*, 841 S.W.2d 550, 551 (Tex.App.—Houston [1st Dist.] 1992, no pet.). This limited exception to the probable cause requirement does not, however, automatically extend to those who are merely on the premises at the time of the execution of the search warrant. *Lippert v. State*, 664 S.W.2d 712, 721–722 (Tex.Crim. App.1984) (a valid warrant to search a particular location, standing alone, does not carry with it the right to detain, search, or frisk persons who are found on the premises, but who are not directly associated with the premises and not named or specifically described in the warrant).

According to *Lippert*, in order to justify the detention and search of a person, other than an occupant, who is present on the premises during the execution of a valid search warrant, there must be some independent factors, other than mere presence, that tie the person to the unlawful activities on the premises. 664 S.W.2d at 720. In other words, there must be some factors, aside from mere presence, that give rise to a rea-sonable, articulable suspicion that appellant has either committed or is about to commit a crime. *Id.* Absent these independent factors, it is just as likely that the person is an innocent visitor on the premises as it is that he is engaged in criminal enterprise. *Id.*

Appellant maintains that the only factor in this case, besides mere presence on the premises, was the fact that he immediately began to run toward the east side of the residence when he observed the raid team approaching the house. He argues that this is insufficient to justify a detention. Although flight alone is insufficient to justify an investigatory detention,[1] flight from a show of authority may be a factor in support of a finding of reasonable suspicion that an individual is involved in criminal activity. *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Appellant argues that the facts of *Bell v. State*, 845 S.W.2d 454 (Tex.App.—Austin 1993, no pet.), are remarkably similar to this case. In *Bell*, the defendant was standing on the front porch of a residence when the police arrived to execute a search and arrest warrant that did not name or describe the defendant. When the defendant noticed the police approaching, he moved toward the front door of the house and shouted, "Police, police." Within a matter of minutes the officer grabbed the defendant, threw him to the ground and handcuffed him. In a subsequent frisk, the officer felt an object in the defendant's right front pants pocket that seemed to be a knife. The officer then removed a legal pen knife and a plastic bag which contained marijuana. *Id.* at 457. While *Bell* does bear some similarities to the present case, it is distinguishable in several respects.

Although the opinion discussed *Lippert* and whether the officers were justified in

1. *See, e.g., Salcido v. State*, 758 S.W.2d 261, 264 (Tex.Crim.App.1988) (appellant tried to run from police; invalid investigatory stop because police did not observe criminal activity); *Hawkins v. State*, 758 S.W.2d 255, 260 (Tex.Crim.App.1988) (appellant in high-crime area ran from police; invalid investigatory detention because no evidence of criminal activity); *Comer v. State*, 754 S.W.2d 656, 658 (Tex.Crim.App.1986) (appellant in high-crime area who attempted to leave as officers approached; invalid investigatory stop because officers observed no other unusual activity); *Pickens v. State*, 712 S.W.2d 560, 562 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (appellant in parking lot of hotel where burglaries frequently occurred put car in reverse and drove away when officer approached; flight and high-crime area not sufficient for reasonable articulable suspicion).

detaining the defendant when the only knowledge that they had was that the defendant was present on the premises and shouted to others in the house, the conclusion that the search was illegal ultimately rested upon the fact that an arrest and not a detention had occurred. *Id.* at 459–60. The court held that the officers had arrested the defendant at the moment they handcuffed him and under the circumstances they had no probable cause to do so. *Id.* Therefore, the subsequent search of the defendant was not justified. In this case, however, appellant was not arrested until after the search was completed and the marijuana was found. *Id.* at 460.

At the time officer Moreno detained appellant, a magistrate had determined that there was probable cause to believe that persons inside the residence were involved in narcotics; appellant was present on those premises, and he immediately began to run when he saw the narcotics team approaching. Although either of these factors, standing alone, might not have been sufficient to justify a detention, we hold that under the circumstances, Moreno was justified in temporarily detaining appellant to determine if appellant was an occupant of the premises. Appellant's presence on and flight from the premises were specific and articulable facts that gave rise to a rational inference that appellant was an occupant of those premises. This was sufficient to permit a brief detention of appellant to determine whether this was in fact true. *Mottley*, 841 S.W.2d at 551.

### 2) The protective search for weapons

Appellant further contends that even if he was validly detained, Officer Moreno was not justified in conducting a protective search for weapons. He argues that although Officer Moreno testified that he searched appellant for the safety of himself and his fellow officers, it was not reasonable for Moreno to infer from the fact appellant was on the premises of, and attempting to flee from, the scene of a narcotics raid, that appellant was armed and dangerous. Appellant claims that an officer cannot perform a protective search unless he or she can point to specific and articulable facts that indicate the individual to be searched has a weapon. Appellant relies heavily on *Lippert*, 664 S.W.2d at 717, to support his conclusion that the search in the instant case was improper, but *Lippert* is distinguishable in several respects.

In *Lippert*, the police were executing a search warrant for narcotics. The defendant was not in the residence or on the premises when the search commenced, but rather arrived and entered the house 15 to 30 minutes after the house had been secured by the raid team. An officer immediately grabbed the defendant and told him that a drug raid was on and the defendant was frisked. Although no weapons or narcotics were found at that time, the officer refused to allow the defendant to leave the premises and ordered him to sit on the floor with other individuals who had been arrested. A second officer then arrived to transport the arrested individuals and, not knowing what had previously transpired, frisked all persons, including the defendant, as a matter of routine police procedure. This time, a hard vinyl case that contained narcotics was found in the defendant's right shirt pocket.

The Court of Criminal Appeals held that the defendant's mere propinquity to those suspected of criminal activity could not, standing alone, form the basis for a reasonable suspicion that the defendant was involved in any criminal activity himself or that he was armed and presently dangerous. The Court noted:

> There was no flight, no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed. There were no threats made and no attempt made to resist detention.

*Lippert*, 664 S.W.2d at 721. Here, however, there were circumstances, other than mere presence, that justified the detention and frisk of appellant.

In *Manry v. State*, 621 S.W.2d 619, 622 (Tex.Crim.App.1981), police officers had received information that illegal prescriptions were being dispensed from a doctor's office. Although they did not possess a search warrant for the premises, the officers entered the doctor's office to investigate. When they announced themselves, a patient ran suddenly behind a counter. The officers proceeded

to frisk the patient and narcotics were found on his person. The Court of Criminal Appeals upheld the search as reasonable. In so doing, the Court noted:

> While appellant was not necessarily a "suspicious person" merely by virtue of his presence in the office, his unusual behavior upon the entry of the officers justified officer Hruzek's action in patting down his person, which resulted in the discovery of the contraband.

*Id.* at 622–23. The Court distinguished the case from *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) where officers were executing a search warrant on a tavern and searched an individual who was merely present on the premises. The Court held that *Ybarra* did not apply because not only was Manry on the premises, he also engaged in suspicious, furtive movements. The additional factor of evading detention justified the frisk conducted for the officers' safety. *Manry,* 621 S.W.2d at 623.

█ *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), merely requires that once a police officer has validly detained an individual, he or she must have a *reasonable* fear for his or her safety in order to conduct a limited protective search for weapons. The purpose of such a search is to allow the officer to pursue investigation without fear of violence. *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992). An officer does not need to be absolutely certain that an individual is armed before a search can be performed. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

A balance must be struck between the privacy interest of individuals and the safety of police officers in performing their duty. *See, e.g., Ybarra,* 444 U.S. at 91–93, 100 S.Ct. at 342–43 (mere presence on premises of public place when search warrant is executed does not, standing alone, give officer right to search and frisk); *United States v. Rideau,* 969 F.2d 1572, 1574–76 (5th Cir.1992) (frisk of defendant detained at night on the street when officer suspected he was intoxicated

was reasonable even though officer did not see or hear anything that indicated the presence of a weapon); *Spillman v. State,* 824 S.W.2d 806, 809–10 (Tex.App.—Austin 1992, pet. ref'd) (officer justified in performing protective search for his safety on passenger in vehicle detained at night for traffic offense). While we recognize that constitutional protections against unreasonable searches cannot be whittled away by police regulations or standard operating procedure,[2]

> [w]e must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context.
>
> . . . .
>
> We are unwilling to tie the hands of police officers operating in potentially dangerous situations by precluding them from taking reasonable steps to ensure their safety when they have legitimately detained an individual.

*Rideau,* 969 F.2d at 1574–75.

We do not contend that a lawful detention constitutes a license to frisk under all circumstances where an officer fears for his safety. The officer must have some objective, *reasonable* basis for concluding that his safety is in danger. We simply recognize that the setting in which the police officer acts may reasonably and significantly affect his decisional calculus. *See Rideau,* 969 F.2d at 1576. We hold that once the encounter with appellant was justified, if Moreno had a reasonable basis from which he could infer that his safety was in danger, he was justified in performing a limited protective search even though he could not point to specific words or acts of appellant that indicated he might possess a weapon.

When Officer Moreno searched appellant, a magistrate had determined that there was probable cause to believe that narcotics trafficking was occurring on the premises described in warrant, appellant was present on those premises and attempted to flee when the officers arrived. Based on the violent nature of narcotics trafficking and the fact

---

2. *See Benavides v. State,* 600 S.W.2d 809, 812 (Tex.Crim.App.1980).

that the house had not yet been secured at the time that appellant was detained, we hold that it was reasonable for Moreno to conclude that the search was necessary to protect the officers' safety while the warrant was being executed. Therefore, the search was justified.

### 3) The scope of the protective search

Appellant's final contention is that, even if the officer was justified in conducting a protective frisk, Moreno exceeded the proper scope of such a frisk when he reached into appellant's pocket and pulled out a knife along with the plastic bag of narcotics. Appellant argues that the officer was only justified in removing the knife and should have made an effort to leave the baggie in his pocket.

All of the cases cited by appellant can be readily distinguished from the circumstances in this case. In *Davis v. State*, 829 S.W.2d 218, 221 (Tex.Crim.App.1992), the arresting officer reached into the defendant's pocket and removed keys, papers and a matchbox when conducting a protective search. The Court held that the officer was not justified in opening the matchbox because it was not reasonable for him to believe that it might contain a weapon. In this case, it was reasonable for Moreno to conclude that appellant had a weapon in his pocket.

In *Flores v. State*, 824 S.W.2d 704, 706 (Tex.App.—Corpus Christi 1992, pet. ref'd), the court held that an officer was not entitled to remove a plastic bag from a detainee's pocket during a protective search because its non-threatening character was evident. Here, however, during Moreno's pat-down search of appellant he felt an object which appeared to be a knife and in extracting the weapon also removed the plastic baggie contained in the pocket. Once the pat-down confirmed that the object in the pocket had the characteristics of a weapon, Moreno was justified in reaching into the pocket and removing its contents. We cannot say that the officer clearly exceeded the scope of a protective search when he took limited steps to remove the weapon.

### CONCLUSION

Although appellant was not named in the search warrant, his presence on the premises, combined with his attempted flight, allowed Officer Moreno to detain him briefly to determine his connection with the premises. Once Moreno had reasonable grounds to detain appellant, he had the right to conduct a limited pat-down search for weapons, if, under all the circumstances, he reasonably feared for his safety. Based on the violent nature of narcotics trafficking and the fact that the house had not yet been secured at the time that appellant was detained, it was not unreasonable for Moreno to infer that the search was necessary to protect himself and his fellow officers. Finally, the officer properly confined his search to what was minimally necessary to investigate whether appellant was armed. The trial court, therefore, did not err by denying appellant's motion to suppress.

We overrule appellant's sole point of error.

We affirm the judgment of the trial court.

HUTSON–DUNN and FRANK C. PRICE [3], JJ., also participating.