Affirmed and Opinion filed December 31, 2002









Affirmed
and Opinion filed December 31, 2002.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00112-CR

____________

 

KRISTEN KAY DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County Criminal Court at
Law No. 12

Harris County, Texas

Trial Court Cause No. 1073432

 



 

O P I N I O N

Appellant, Kristen Kay Davis, was convicted on her guilty
plea for possession of marijuana and sentenced in accordance with a plea
agreement to two days in the Harris County Jail and assessed a $1,000
fine.  In her sole issue on appeal,
appellant asserts the trial court erred in failing to suppress evidence.  We affirm.








                                                             I. 
Background

On Aug. 15, 2001, Officer James
Sheldon of the Houston Police Department was working an anti-drug program in
the Greenspoint area.  Sheldon had staked
out the area at the intersection of Aldine Bender and Imperial Valley where
Sheldon had made prior drug related arrests. 
Sheldon, in an unmarked vehicle, pulled into the parking lot of a small
shopping center where several males were Amilling around drinking beer, wine.@ 
Sheldon observed one male smoking a marijuana cigarette and radioed the
marked units that were out of sight, but nearby.  

When a marked unit arrived, Joseph Diaz, a young male on a
bicycle who was in the middle of the group, immediately rode away.  Sheldon observed Diaz motioning to a black
Mustang to leave the area.  When Sheldon
saw the Mustang immediately begin to back up, he radioed for a marked unit to
intercept the Mustang and another marked unit to apprehend Diaz.  When Sheldon radioed the marked units, he
advised them of what he had observed concerning the Mustang.  Sheldon considered both Diaz=s actions in riding away from the
crowd when the police arrived and the Mustang=s response to the Diaz=s motions as suspicious.  It has been Sheldon=s experience that where there is a
group of people, and in this case an individual smoking a marijuana cigarette, A[w]hen the marked units start to roll
into the area, inevitably somebody is going to start to get up and move.@ 


Officer Carl Sanders, who was in a marked unit, heard Sheldon=s request for the interception of the
Mustang.  When Sanders arrived, the
Mustang had backed up about five feet and was moving.  Sanders noticed a child under the age of two
in the backseat; the child was not restrained. 
Sanders then turned on the emergency lights and turned the spotlight on
the Mustang.  When the Mustang stopped,
appellant exited the vehicle and tried to restrain the child.  Sanders asked her if she had any Adope or guns@ in the vehicle.  Appellant pointed to a brown paper bag in the
area of the console and said AI don=t know what it is, he threw it in here.@ 
Sanders understood that appellant was talking about the person on the
bicycle, Diaz.  








Sanders had appellant step over to the front of his patrol
car, while he looked in the Mustang. 
There, he observed a brown paper bag from which protruded clear bags
containing a green leafy substance that 
he believed was marijuana. 
Sanders placed appellant in the back of his patrol car.  Sanders retrieved the brown bag from the
Mustang and poured its contents, 16 small bags of marijuana, onto the hood of
his patrol car.  Sanders informed
appellant she was under arrest, advised her of her rights, and asked for her
consent to search the Mustang.  Sanders
asked appellant if there were more drugs in her car; she responded there were
on the other side of the floor.  Sanders
did not see anything on the other side of the floor, but when he lifted up the
floor mat, he found another bag of marijuana. 
Sanders asked appellant how she knew what was underneath the floor mat
when she did not know what was in the paper bag; appellant had no
response.  

Appellant testified that she and Diaz were married but were
separated.  Appellant claims she and Diaz
were going to meet at his grandmother=s house.  When Diaz motioned for her to leave, she A figured he was just ready to go.@ 
Appellant=s son was climbing out of his car seat.  Appellant noticed a police car pulling up
behind her after she had stopped and was trying to put her son back in his
seat.  Appellant told the officer she was
trying to put her son back in his car seat. 


Appellant claims she did not motion to the paper bag.  Instead, Appellant testified that Diaz Ahad just gotten out of rehab.  And so I was kind of suspicious of what he
had handed me and I just let him know, I told him that there was a brown bag in
the car, that I didn=t know what was in it.@ 
With regard to the bag of marijuana on the passenger side of the floor,
appellant testified she did not tell the officer there were more drugs.  Appellant claims Diaz had been riding with
her earlier that day and might have put the bag of marijuana on the passenger
side of the floor without her knowledge. 









                                                 II. 
Reasonable Suspicion

A trial court=s ruling on a motion to suppress is
reviewed under an abuse of discretion standard. 
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  In a hearing on a motion to suppress, the
trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000).  Because the trial
court observes the demeanor and appearance of the witnesses, it may believe or
disbelieve all or any part of a witness=s testimony, even if that testimony
is uncontroverted.  Id.  When, as in this case, the trial court does
not file findings of fact, we view the evidence in the light most favorable to
the trial court=s ruling and assume the trial court made implicit findings of
fact that support its ruling as long as those findings are supported by the
record.  Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000).  

An investigative detention occurs when the police stop and
briefly detain an individual to ascertain his identity, the reason for being in
the area, or other such similar inquiry. 
Amores v. State, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991).  Before a detention is justified, the officer
must possess reasonable suspicion to detain the suspect, i.e., the
officer must have specific, articuable facts, which in light of his experience
and general knowledge, together with rational inferences from those facts,
would reasonably warrant the intrusion on the freedom of the citizen stopped
for investigation.  Gurrola v. State,
877 S.W.2d 300, 302 (Tex. Crim. App. 1994). 
The articuable facts Amust create some reasonable suspicion that some activity out
of the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication the unusual activity is
related to crime.@  Garza v. State,
771 S.W.2d 549, 558 (Tex. Crim. App. 1989). 
There need only be an objective basis for the stop; the subjective
intent of the officer is irrelevant.  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  








The determination of reasonable suspicion is made by
considering the totality of the circumstances. 
Id.  In conducting the
totality of the circumstances determination, the reviewing court uses a
bifurcated standard of review:  (1)
giving almost total deference to a trial court=s determination of historical facts
and application of law to fact questions that turn on credibility and demeanor,
and (2) reviewing de novo application of law to fact questions that do not turn
on credibility and demeanor.  Id.  In other words, we give almost total
deference to the trial court in determining what the actual facts are and review
de novo whether those facts are sufficient to give rise to reasonable
suspicion.  Id.  

The State presented the two following theories on which to
base reasonable suspicion to justify the stop: 
(1) Sheldon=s observing the actions of Diaz and the Mustang, and (2)
Sanders= observing an unrestrained child in
the back seat of the Mustang.  

                                                               A.  Drug Activity

Appellant contends an individual leaving the scene of an
investigation and gesturing to another individual, who is not connected with
the scene, is not sufficient to establish reasonable suspicion warranting
detention.  Specifically, appellant
argues there were no articuable facts upon which to base reasonable suspicion
to even detain Diaz; therefore, if Diaz=s detention was not valid, then there
was no basis for detaining appellant.  

Appellant relies on Gurrola in support of this
assertion.  In Gurrola, an
individual reported a disturbance at a nearby apartment complex to a patrolling
deputy.  Gurrola, 877 S.W.2d at
301.  The deputy knew the apartment
complex to be an unsafe location that had incurred several complaints of
disturbances from area residents.  Id.  The deputy saw three men and one woman
engaged in what appeared to be an argument; as the deputy approached the group
to find out what was going on, they began to leave.  Id. 
The deputy ordered the individuals to come back and place their hands on
a parked vehicle.  Id.  The deputy conducted a pat-down search and
found on the defendant a .38-caliber handgun and a packet containing a white
substance that was later found to be cocaine. 
Id.  








The Court of Criminal Appeals found the defendant=s detention was not based on
reasonable suspicion and, therefore, the trial court abused its discretion in
denying the motion to suppress.  Id.
at 305.  In reaching its conclusion, the
court noted mere flight from a law enforcement officer is not sufficient to
justify an investigative detention; rather, an individual has the right to
refuse to answer questions by officers who have no reasonable suspicion.  Id. at 303.  Moreover, the individual who reported the
disturbance did not inform the officer that any criminal activity had occurred
or was occurring.  Id.  

Appellant also relies on Domingo v. State, 82 S.W.3d
617 (Tex. App.CAmarillo 2002, no pet.).  In Domingo, officers from the gang
unit stopped to talk, on a consensual basis, with the defendant and others who
were congregated in the vicinity of a residence in an area that had a
reputation for being the scene of gang and drug-related activities.  Id. at 618.  While talking to the defendant, the officer
noticed the strong odor of alcohol; the officer suspected the defendant was
intoxicated and investigated him for public intoxication.  Id. at 619.  When asked to give his name, the defendant
gave a false name.  Id.  Suspicious that the defendant had, in fact,
given a false name, the officer took him to the station, where it was
discovered the defendant had given a false name and there were outstanding
arrest warrants.  Id.  Observing that the officer had no other
indication that the defendant was intoxicated, the court found that in the
absence of articuable facts that could reasonably raise a suspicion that the
defendant had either impaired mental or physical faculties due to alcohol
consumption or a blood alcohol level of .08 or more, the detention of the
defendant was unlawful.  Id. at
622. 








Appellant also relies on Gamble v. State, 8 S.W.3d 452
(Tex. App.CHouston [1st Dist.] 1999, no
pet.).  In Gamble, officers were
conducting a routine patrol in a marked unit in the vicinity of a residence in
a block known for heavy drug sales.  Id.
at 453.  The police had been called about
70 times in one year to either the residence or the area for disturbances and
trespassing.  Id.  The officers saw the defendant standing on
the shoulder of the street directly in front of, or about 30 feet away from and
walking toward, the residence.  Id.  The officers became suspicious because, as
they passed the defendant, he stopped and kept turning around to watch their
patrol car.  Id.  The officers turned around and as they
approached the defendant, he walked away. 
Id.  The officers became
suspicious and suspecting that the defendant might have a weapon or might be
going to the residence without permission, stopped him.  Id. 
The court held these facts did not establish reasonable suspicion in
order to detain the defendant.  Id.
at 454.  

We find Gurrola, Domingo, and Gamble
distinguishable.  The fact that a certain
area is known for criminal activity is not sufficient to justify a detention,
but it may be taken into account along with other factors.  Klare v. State, 76 S.W.3d 68, 74 (Tex.
App.CHouston [14th Dist.] 2002, pet. ref=d). 
Flight from a show of authority may also be a factor in support of a
finding of reasonable suspicion.  Salazar
v. State, 893 S.W.2d 138, 141 (Tex. App.CHouston [1st Dist.] 1995, pet. ref=d); Gilbert v. State, 874
S.W.2d 290, 295 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d). 


The facts in this case involve more than an area previously
known for drug activity or an individual fleeing the scene upon the arrival of
the police.  Unlike Gurrola, Domingo,
and Gamble, the evidence in this case showed that Sheldon observed an
individual smoking a marijuana cigarette. 
Moreover, Sheldon testified that in his experience, when the police
arrive and contraband is present, someone will frequently attempt to leave the
scene.  Upon immediately leaving the
group, Diaz motioned for the Mustang to leave the area, which, in turn,
immediately started to drive away.  In
determining whether there is a legitimate basis for reasonable suspicion, the
facts may be viewed from the viewpoint of a trained law enforcement officer;
facts that have no meaning to the untrained may provide the basis for the
deduction and inference that caused the officer to focus his attention on the
accused.  Gilbert, 874 S.W.2d at
293.  Based on the totality of the
circumstances, we find Sheldon had articuable facts upon which to base
reasonable suspicion that appellant was involved in drug activity justifying
her detention.  








                                                            B.  Traffic Violation

Appellant was required to keep her
two-year-old son secured in a child passenger safety seat system.  See Tex.
Transp. Code Ann. ' 545.412 (Vernon Supp. 2003). 
An officer may lawfully stop an individual for a traffic violation.  Walter v. State, 28 S.W.3d 538, 542
(Tex. Crim. App. 2000); McVickers v. State, 874 S.W.2d 662, 664 (Tex.
Crim. App. 1993).  

Appellant admits an investigative detention may be justified
if the officer, based on specific and articuable facts, reasonably believes
that some crime, even if unrelated to the object of the investigation, has been
committed.  See Graham v. State,
893 S.W.2d 4, 7 (Tex. App.CDallas 1994, no pet.). 
Appellant, however, complains Sanders did not observe that appellant=s son was not properly restrained
until after he stopped her based on Sheldon=s observations.  Appellant maintains it was not until after
Sanders initiated the stop by shining his spotlight on the Mustang that he
observed the child in the back seat and his suspicions were not confirmed until
after he had stopped appellant and she told him her son had gotten out of his
seat.  

On
direct examination during the suppression hearing, Sanders specifically stated
he observed a young child unrestrained in the back seat prior to turning the
spotlight on the Mustang:

Q.  Was the car in movement when you arrived?

A.  Yes.

Q.  Did you observe anything in the back seat as
you were arriving?

A.  Yes, I did. 

Q.  What did you observe?

A.  A small child

Q.  And was the car -- was the child restrained?

A.  No.








Q.  How old was the child?

A.  Under the age of two.

                                                                   *        *       
*

Q.  What did you do after you notice the child
unrestrained?

A. 
I turned on my emergency lights and I turned on my spotlight on the
vehicle.

Appellant
relies on Sanders= testimony during cross-examination in support of her
assertion that it was not until after Sanders initiated the stop by shining his
spotlight on the Mustang that he observed a young child unrestrained in the
back seat and that appellant confirmed his suspicions.  However, Sanders testified appellant=s actions confirmed that he had seen
a small child unrestrained in the back seat prior to turning his spotlight on
her vehicle:

Q.  You were stopping this vehicle for the
purposes of investigating, as its involvement in this drug arrest, correct?

A.  That=s correct.

Q.  You didn=t pull into the parking lot with the
purpose of stopping this individual for having an unrestrained child in a seat,
correct?

A.  No.

Q.  In fact, this car is a black Mustang,
correct?

A.  That=s right.

Q.  The car has tinted windows, right?

A.  Yes, it does.

                                                                   *
       *        *

Q.  . . . [Y]ou told Officer Sheldon that as soon
as you approached the individual, [appellant] stopped and got out of the car,
right?

A.  That=s correct.








Q.  And she was the one that drew your attention
to the child being unrestrained because she started talking about her child,
right?

A.  No.

Q.  Is it your testimony you can see clearly into
the black Mustang with tinted windows in the back seat and notice an
unrestrained child; is that your testimony?

A.  My testimony was when I put my spotlight on
the vehicle, I could see the object in the back seat of the vehicle, there was
a person back there.  And when she jumped
out, she brought my attention that it was a small child.  But I knew it was a small child by the
silhouette of the body, of the object in the back seat.

Q.  So what you saw was something in the back
seat, right?

A.  Right. 
Which appeared to be a small child. 


Q.  And she draws your attention to the fact the
child was unrestrained and she was stopping in order to restrain her child?

A. 
Right.  What she confirmed was
what I saw.

On
redirect examination, Sanders restated that he had seen a child unrestrained in
the back before appellant stopped and got out of the vehicle:

Q.  So before she drew your attention, is it fair
to say you knew it was a child that was unrestrained?

A.  Yes.

Q.  And the vehicle was moving?

A. 
That=s correct, it was moving.

Sanders testified that he observed a child unrestrained in
the back seat of appellant=s vehicle before he made the stop.  When appellant jumped out of her vehicle, she
confirmed what he had already observed. 
Appellant, on the other hand, testified she was already out of the
vehicle and putting her child in his car seat when Sanders pulled up behind
her.  








The trial court is the sole trier of fact and judge of
credibility of the witnesses and the weight to be given their testimony.  Ross, 32 S.W.3d at 855.  In denying appellant=s motion to suppress, the trial court
not only implicitly found Sander=s testimony credible, it specifically
found Athe Officer=s testimony credible.@ 
See Walter, 28 S.W.3d at 540. 
Therefore, we will accept Sanders= testimony as true.  See id.  Sanders was justified in stopping appellant
upon observing her two-year-old son unrestrained in the back seat of the
vehicle.  

Appellant=s sole issue is overruled. 
Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed December 31, 2002.

Panel consists of
Chief Justice Brister and Justices Hudson and Murphy.*

Do Not Publish C Tex.
R. App. P. 47.3(b).











*  Senior Chief
Justice Paul C. Murphy sitting by assignment.