**Opinion issued December 16, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00200-CR**

————————————

**MAX EDWARD WEBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1399396**

---

**MEMORANDUM OPINION**

Max Webb pleaded guilty to possession of methamphetamine[1] after the trial

court denied his motion to suppress evidence recovered during a *Terry* search. In

two issues, Webb asserts that the court should have granted the motion because the

---

[1]    TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West 2010).

detention and search lacked justification or, alternatively, the search was initially justified but became unconstitutionally broad. We affirm.

## Background

A motel owner asked two police officers, Sergeant G. Beck and Deputy C. Marshall, to give a criminal trespass warning to a man and a woman occupying one of the motel's rooms without authorization. The owner told the officers that he had previously notified the woman, and possibly also the man, that they were not supposed to be there.

As the officers approached, they observed the man, later identified as Webb, exiting the room with two large duffle bags. The woman exited right behind him. As she left the motel room, she dropped a baggie containing a substance that Deputy Marshall, an officer who specializes in narcotics crimes, recognized to be methamphetamine.

Sergeant Beck "made contact" with the woman while Deputy Marshall "made contact" with Webb. Deputy Marshall testified that he asked Webb to put down the duffel bags, and when Webb complied Deputy Marshall spotted a black knife in Webb's back pocket. Deputy Marshall asked Webb if he had any weapons on him; Webb replied that he did not. Deputy Marshall detained Webb and began frisking him for weapons.

Deputy Marshall ordered Webb to turn and place his hands on a nearby wall. He quickly found two knives on Webb. As Deputy Marshall reached to retrieve the second knife, Webb took his hands off the wall. The deputy handcuffed Webb as a safety precaution and then continued the frisk. According to his testimony, Deputy Marshall felt an object, which he believed to be a gun, on the inside of Webb's thigh. When Deputy Marshal discovered the object, Webb suddenly turned, lost his balance, and fell on the floor. Because Webb continued to resist the search, Sergeant Beck came over, helped restrain Webb, and unholstered his Taser.

Deputy Marshall testified that the officers did not remove the object through Webb's waistband because they did not know in which direction the "gun" was pointed and did not want it to accidentally discharge. Eventually, two more officers arrived to help secure Webb. The officers cut through Webb's pants and retrieved the object, which was a cylinder of methamphetamine wrapped in pantyhose. The officers arrested Webb.

Webb moved to suppress the methamphetamine, arguing that his detention and search were not justified under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). The trial court denied the motion. Webb pleaded guilty but retained his right to appeal the denial of his motion.

**Motion to Suppress**

In two issues, Webb contends that the trial court erred by denying his motion to suppress because (1) the police had no justification under *Terry* to detain or frisk him and (2) the scope of the frisk went beyond the constitutional limits of a *Terry* frisk.

**A.      Standard of review**

In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We view the evidence in the light most favorable to the trial court's ruling and give "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327. But we apply a de novo standard of review to the application of search and seizure law and to mixed questions of law and fact that do not depend on credibility or demeanor. *Gonzales*, 369 S.W.3d at 854; *Carmouche*, 10 S.W.3d at 327.

**B.      Justification for detention and frisk**

In his first issue, Webb asserts that, under the standards set forth in *Terry* and subsequent cases, the officers had no justification to (1) initiate an investigative detention or (2) frisk him for weapons.

4

### 1. Detention

A law enforcement officer may conduct a brief investigative detention, or "*Terry* stop," when he has a reasonable suspicion that an individual is involved in criminal activity. *See Terry*, 392 U.S. at 22, 88 S. Ct. at 1880; *see also Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) ("A seizure [of a person] based on reasonable suspicion . . . will generally be reasonable."). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational interferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Courts review the totality of the circumstances when determining whether a police officer has reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585 (1989); *Ford*, 158 S.W.3d at 492–93. Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *United States v. Martinez-Fuerte*, 428 U.S. 543, 560–61, 96 S. Ct. 3074, 3084 (1976) ("[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure."). We judge the reasonableness of a police officer's actions from the perspective of a reasonable officer at the scene without the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

In this case, Deputy Marshall detained Webb after he approached the motel room to issue a criminal trespass warning. Several facts support the conclusion that Deputy Marshall had reasonable suspicion to justify this detention. Both Webb and his companion were exiting the same hotel room. No one else was with them. His companion dropped a baggie of methamphetamine. Webb was carrying two large duffle bags out of the room. According to Deputy Marshall, Webb appeared nervous. Deputy Marshall also testified Webb denied having any weapons on him, yet Deputy Marshall saw a knife in Webb's back pocket. Webb concedes that the area has a high crime rate; Deputy Marshall testified that the motel is in a high-crime area; and Sergeant Beck testified that the motel is a "known place" for prostitution, burglaries, car thefts, and narcotics. *See Adams v. Williams*, 407 U.S. 143, 147–48, 92 S. Ct. 1921, 1924 (1972) (concealed weapon, possible narcotics, and high-crime area justified *Terry* stop).

Webb argues that the officers had no reasonable suspicion that he was engaging in criminal trespass because he did not have notice that he was trespassing. Prior notice is an element of that offense. TEX. PENAL CODE ANN. § 30.05 (West Supp. 2014). Notably, the record contains contradictory evidence regarding whether Webb received prior notice. We assume the factfinder resolved this conflict in favor of the decision to overrule the motion to suppress and defer to that conclusion. *Gonzales*, 369 S.W.3d at 854. Webb also argues that his mere

6

proximity to his companion when she threw down the bag of methamphetamine is not sufficient to create reasonable suspicion that he was also possessing narcotics.

Both of these arguments fail because reasonable suspicion does not require probable cause for each element of a particular offense. *Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim. App. 2011); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). "It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Crockett*, 803 S.W.2d at 311. Further, the circumstances justifying a *Terry* stop do "not necessarily mean that the information [relied upon to justify the detention] must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *Derichsweiler*, 348 S.W.3d at 917. "It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—i.e., it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing." *Id.*

Here, Deputy Marshall had much more than a hunch. Webb was in a high-crime area, carrying a knife, trespassing, leaving a private room together with a companion who was carrying narcotics, and removing unknown items from that private room in two large duffle bags. While we agree with Webb's assertion that

7

proximity alone does not create the requisite reasonable suspicion, there was much more than mere proximity here. *See Lippert v. State*, 664 S.W.2d 712, 721–22 (Tex. Crim. App. 1984); *Salazar v. State*, 893 S.W.2d 138, 142 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd, untimely filed). Webb's proximity to his companion and the additional circumstances discussed above justify his detention because the totality of the circumstances supports the reasonable suspicion that Webb was engaged in criminal activity. *See Salazar*, 893 S.W.2d at 142.

### 2. Frisk

Webb also contends that the officers did not have justification to conduct a *Terry* frisk. "Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous." *Carmouche*, 10 S.W.3d at 329. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

According to the officers' testimony, they frisked Webb because: (1) Webb's companion had just thrown down a bag of methamphetamine, and weapons are often associated with narcotics; (2) Webb had a knife; and (3) Webb lied about having a knife after Deputy Marshall saw the weapon. Together, these

8

provide an objective basis for reasonably prudent officers to be concerned for their safety. Weapons are frequently associated with narcotics, and this association can help justify a *Terry* frisk. *Carmouche*, 10 S.W.3d at 330. That Deputy Marshall saw a knife on Webb's person, and that Webb lied about this weapon after the deputy saw it, provides additional justification for the frisk.

Webb responds that the record contains evidence directly contradicting Deputy Marshall's testimony. While that may be true, we defer to the factfinder to resolve questions of fact and weigh the evidence. *Gonzales*, 369 S.W.3d at 854. In this case, we assume the factfinder chose to credit the deputy's testimony and discount any contrary evidence. *See id.* The reasons given in the deputy's testimony justify the *Terry* frisk.

We conclude that the evidence, when viewed in the light most favorable to the trial court's finding, demonstrates justification for both the detention and the frisk of Webb. Accordingly, we overrule Webb's first issue.

## C. Scope of search

In his second issue, Webb asserts that the scope of the *Terry* frisk went beyond constitutional bounds. "When a protective search is warranted, the search must be carefully limited to that which is necessary to discover weapons that could reasonably harm the police officers or others." *Balentine v. State*, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002). Webb contends that the officers had no reason to fear

9

the unknown object in his pants because, by the time it was retrieved, the officers had already handcuffed Webb, pinned him to the ground, and drawn—but never fired—a Taser, thereby eliminating any threat Webb previously posed to them.

The State contends that Webb did not raise this issue before the trial court and thus failed to preserve any error. Preservation of error requires a party to timely file an objection and to obtain a ruling on the objection. TEX. R. APP. P. 33.1(a). "The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009).

This case involves two motions to suppress: one filed by Webb pro se and another filed by Webb's trial counsel. Webb withdrew his pro se motion from the court's consideration and never obtained a ruling. Therefore, his pro se motion does not preserve any error. His trial counsel's motion asserts merely that "[h]is person was searched in violation of his constitutional rights." This language is too broad to give the trial court notice of the specific constitutional injury alleged. Webb's counsel also filed a brief in support of this motion, which objects that "the officers do not articulate, nor is there evidence of any reason to believe defendant was armed or presented a danger to the officers *prior to the initiation of the search*." (emphasis added). The brief limits its argument to whether justification existed to initiate the frisk; it does not address whether, once initiated, the frisk

10

subsequently exceeded the scope of *Terry*. Similarly, in the hearing on the motion, Webb's counsel argued that "[the State has] offered no justification for searching the defendant for weapons . . . ." Counsel thereby limited his argument to the justification for the search and did not challenge the scope of that search.

We conclude that Webb did not preserve any error regarding the scope of the *Terry* frisk. Accordingly, we overrule Webb's second issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

11