

# NUMBER 13-24-00036-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ISRAEL GARCIA HERNANDEZ,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF WILLACY COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Chief Justice Tijerina**

Appellant Israel Garcia Hernandez was convicted of evading arrest or detention with a motor vehicle, a third-degree felony, and received a sentence of two years' confinement that the trial court probated for three years. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A). By one issue, appellant contends the evidence is insufficient to support the conviction because the initial stop was unlawful. We affirm.

## I.    STANDARD OF REVIEW AND APPLICABLE LAW

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327.

Here, the State had to prove that appellant intentionally fled from a person he knew was a peace officer attempting to lawfully arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a); *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). "The text of the statute is plain: it requires proof that an attempted arrest or detention is lawful at the time

2

the person flees." *Day*, 614 S.W.3d at 127 (recognizing that the evading arrest statute "requires that the officer have lawful authority to attempt an arrest or detention"). "[W]hen a lawful detention is an element of the crime, a failure of the State to prove beyond a reasonable doubt that the detention was lawful must result in an acquittal of the defendant." *Id.* at 125. "Fleeing" means "anything less than prompt compliance with an officer's direction to stop." *Home v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.); *see also O'Quinn v. State*, 10-11-00114-CR, 2012 WL 3055280, at *4 (Tex. App.—Waco July 26, 2012, no pet.) (mem. op., not designated for publication). The offense does not require an attempt to completely escape but only an attempt to evade for any period. *See Home*, 228 S.W.3d at 446; *see also O'Quinn*, 2012 WL 3055280, at *4 ("Any delayed compliance can be considered an attempt to evade arrest or detention.").

## II.  INVESTIGATIVE DETENTION

Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts. Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.

3

*Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011) (cleaned up).

Stated differently, an officer may perform an investigative detention if there is a reasonable suspicion to believe that criminal activity "may be afoot." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). The information known to the officer must support more than a mere hunch or intuition. *Id.* Once the circumstances suggest that something illegal is afoot, the officer may, "as long as they act[] with reasonable diligence . . . pursue several plausible theories in attempting to resolve" the suspicion. *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004)). Additionally, an officer may "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Ramirez-Tamayo*, 537 S.W.3d at 36.

### III. PERTINENT FACTS

Marcos Garcia, an officer with the Cameron County Sheriff's Office, testified that on March 17, 2020, when he was previously a patrol sergeant with the Willacy County Sheriff's Office, he was dispatched to a rural area in Willacy County, Texas based on a report from a caller that "there was a suspicious pickup in the area, driving at a slow rate." The 911 caller told dispatch that the suspicious vehicle was "heading west" and that the caller could see taillights.

Officer Garcia testified that it took him "a good 30 minutes to arrive at the scene," which he acknowledged was "a lot of time for a vehicle to move in and out of the area." When he arrived in the area, Officer Garcia observed a vehicle "in close proximity to the

4

residence" belonging to the 911 caller. Specifically, the vehicle was close to the mailbox belonging to the address given by the 911 caller. There were no other vehicles in the rural area. Officer Garcia testified that he approached the vehicle that appellant was driving, activated his emergency red and blue lights, and attempted to initiate a traffic stop. Appellant did not stop his vehicle and continued to drive away from Officer Garcia, turning north on a dirt road. According to Officer Garcia, appellant continued driving for approximately four minutes until he arrived at a gate and stopped his vehicle. Officer Garcia testified that appellant exited his vehicle, refused to identify himself, and attempted to walk away from Officer Garcia. Officer Garcia stated that appellant told him that appellant "saw me all the way over there." According to Officer Garcia, there was a brief physical struggle requiring him to utilize his taser. Officer Garcia arrested appellant.

## IV. DISCUSSION

Appellant contends the evidence is insufficient because the State was unable to prove beyond a reasonable doubt that "the attempted arrest or detention was lawful." Specifically, appellant argues that Officer Garcia "did not have 'a particularized and objective basis to believe' that [appellant] was 'the particular person' subject of the 911 call." Appellant points out that Officer Garcia was not "certain" that appellant's vehicle "was the exact vehicle that the caller had observed" and that evidence was presented that the 911 caller described the suspicious vehicle as a four-door Chevrolet Silverado; however, appellant's truck was not a four-door Chevrolet Silverado. Appellant also states that "Officer Garcia testified that even though the call was about a 'suspicious vehicle driving slow[,]' there was '[n]othing illegal' about activity that was the subject of the call"

5

and Officer Garcia "acknowledged that he 'had not witnessed any violation of law.'"

A police officer does not need to articulate a particular penal statute or offense to conduct an investigative traffic stop. *Derichsweiler*, 348 S.W.3d at 916 (concluding that the lower court "erred to the extent that its opinion may be read for the proposition that facts adduced to give rise to a reasonable suspicion must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense"). "[A] warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information— reasonable suspicion rather than probable cause." *Id.* Especially when determining whether the information suggests "that a crime is about to occur, the requirement that there be 'some indication that the unusual activity is related to crime' does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *Id.* at 917.

In *Derichsweiler*, a woman and her husband called 911 and reported that a man had stopped his vehicle next to and in front of their vehicle at a McDonald's and grinned at them for approximately twenty seconds. *Id.* at 909. The couple thought they saw the man engage in the same behavior in a Walmart parking lot; however, they were unable to "see what the man was doing from that distance in the darkness." *Id.* at 910. The Texas Court of Criminal Appeals held that "the information known collectively to the police . . . ultimately satif[ied]" the standard because "[t]he appellant's conduct," as observed, "while not overtly criminal in any way, was bizarre to say the least." *Id.* at 917. The court reasoned that the appellant's behavior "reasonably suggests someone who

6

was looking to criminally exploit some vulnerability—weak or isolated individual to rob or an unattended auto to burgle." *Id.* The court stated,

> It matters not that all of this conduct could be construed as innocent of itself; for purposes of a reasonable-suspicion analysis, it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however, amorphous, that was about to be acted upon.

*Id.*

Officer Garcia testified that although appellant was not driving a Chevy Silverado, he was driving a truck; his truck was the only vehicle in the very rural area; the truck was "in the vicinity that the caller had advised" and "in close proximity to" the mailbox of the 911 caller; the truck "was the only vehicle out there in the dirt road"; and there had been "a lot of incidences of human smuggling" in that area. The jury was allowed to consider Officer Garcia's experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person such as his knowledge of the human trafficking in that area. *See Ramirez-Tamayo*, 537 S.W.3d at 36.[1] Officer Garcia may have relied on the 911 caller's use of the term "suspicious" and inferred that the caller suspected that the driver of the truck appeared to be engaged in criminal activity or would soon be engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 917. Furthermore, the jury may have reasonably inferred that Officer Garcia properly determined that criminal activity was afoot based on appellant's proximity to the 911 caller's mailbox late at night after the 911 caller

---

[1] There is no issue in this case with respect to the reliability of the information supplied by the 911 caller. *See Derichsweiler v. State*, 348 S.W.3d 906, 915 (Tex. Crim. App. 2011).

saw a suspicious truck driving slowly by his rural residence. *See id.* at 914. Officer Garcia was not required to articulate that a particular crime had occurred. *See id.* Instead, the State needed to merely provide evidence showing beyond a reasonable doubt that Officer Garcia had a reasonable suspicion that criminal activity may be afoot. *See id.*

Additionally, flight from a show of authority is a factor in support of finding a reasonable suspicion that an individual is involved in criminal activity, and here appellant admitted to Officer Garcia that he saw the emergency lights and did not stop. *See Salazar v. State*, 893 S.W.2d 138, 141 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see also State v. Como*, 821 S.W.2d 742, 745 (Tex. App.—Beaumont 1992, pet. ref'd) (finding officer had reasonable suspicion when car's license plates were altered and men standing by the car fled after seeing the police car); *Clarke v. State*, 785 S.W.2d 860, 869 (Tex. App.—Fort Worth 1990) (finding reasonable suspicion when defendant fit the description of home intruder and he began running when he saw the officer), *aff'd*, 811 S.W.2d 99 (Tex. Crim. App. 1991). And when Officer Garcia caught up to appellant where he had parked his truck at a fence at the end of a dead-end dirt road, appellant fled on foot and eventually tussled with Officer Garcia. *See Salazar*, 893 S.W.2d at 141; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("In reviewing the sufficiency of the evidence, we should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." (cleaned up)); *Washington v. State*, 660 S.W.2d 533, 535 (Tex. Crim. App. 1983) ("Flight from a law enforcement officer 'can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement

officer to take action.'"); *Como*, 821 S.W.2d at 745; *Clarke*, 785 S.W.2d at 869; *Hickman v. State*, No. 12-12-00140-CR, 2013 WL 174188, at *4 (Tex. App.—Tyler Jan. 16, 2013, pet. ref'd) (mem. op., not designated for publication) (finding reasonable suspicion where the officer observed a vehicle make a U-turn, then turn onto a driveway of an abandoned house "late in the evening or early morning," and the "[a]ppellant quickly exited the vehicle, and then walked towards the front of his car in a suspicious fashion").

Therefore, considering all the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found that the detention was lawful beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99; *see also United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("Thus, when determining whether reasonable suspicion existed, a court does not inquire whether conduct is innocent or guilty but considers instead 'the degree of suspicion that attaches to particular types of noncriminal acts.'"); *Johnson v. State*, 622 S.W.3d 378, 384–85 (Tex. Crim. App. 2021) ("[R]easonable suspicion does not require negating the possibility of innocent conduct." (cleaned up)); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) ("Reasonable suspicion requires only 'some minimal level of objective justification' for the stop[.]" (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010) (internal quotations omitted)); *Derichsweiler*, 348 S.W.3d at 914 ("Under such circumstances, 'the Fourth Amendment permits the police to make a brief stop to investigate, if only by their presence to avert an inchoate offense.'"); *Copeland v. State*, No. 13-18-00506-CR, 2019 WL 3820425, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2019, pet. ref'd) (mem. op.,

9

not designated for publication) (explaining that the detaining officer "considered [the time of night and the defendant's unusual driving pattern] coupled with information he knew about the propensity for illegal dumping in the area, the absence of legitimate business in the area, and his training and expertise to conclude that [the appellant] may have been or would soon be engaging in criminal behavior"). We overrule appellant's sole issue.

## V.  CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
20th day of February, 2025.